UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| STEVEN INGALLS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00358-JMS-MG |
| | ) | |
| CENTURION HEALTH OF INDIANA, LLC, | ) | |
| BARBARA RIGGS, | ) | |
| SHELBY CRICHFIELD, | ) | |
| R. MALOTT, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Steven Ingalls, Jr., filed this civil rights lawsuit alleging that Centurion Health of Indiana, LLC and Barbara Riggs (Medical Defendants) and Shelby Crichfield and R. Malott (Correctional Defendants) violated his constitutional rights by acting with deliberate indifference to his complaints of ear pain and hearing loss.

Defendants have moved for summary judgment. Dkt. [54]; dkt. [58]. For the reasons below, the motions are **GRANTED** as to Defendants Centurion, Riggs, and Malott and **DENIED** as to Defendant Crichfield.

**I.
Surreply**

Mr. Ingalls filed a surreply to Correctional Defendants' motion for summary judgment after it was fully briefed. Dkt. 71. Surreplies are only permitted in two instances: 1) to respond to new evidence submitted with the defendants' reply, or 2) to respond to arguments that evidence relied upon in the plaintiff's response is inadmissible. *See* Local Rule 56-1(d).

1

Correctional Defendants' reply did not contain new evidence. It did argue that a request for interview filed as an exhibit to Mr. Ingalls' response was inadmissible because it was not authenticated. Dkt. 70 at 6. A portion Mr. Ingalls' surreply addresses this issue. Dkt. 71 at 4. But the Court notes that Mr. Ingalls did provide an affidavit with his original response authenticating the request for interview. Dkt. 69-1 at 2 ("On 29 June 2022, I properly submitted a Request (Ex. 6, p.3, infra) to Shelby Crichfield for an appeal-form for my 27 June 2022 rejected grievance (*Id.* at p. 2) which my prison-facility's administration staff returned to me without any response or appeal-form/appealability-mechanism"). Thus, even as to this issue, his surreply is unnecessary. Because the surreply does not otherwise comply with Local Rule 56-1(d), the Court does not consider it.

## II.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### III.
### Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Ingalls and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A.  The Parties

At all times relevant to his complaint, Mr. Ingalls was incarcerated at Wabash Valley Correctional Facility. Indiana Department of Correction (IDOC) contracted with Centurion Health of Indiana, LLC (Centurion) to provide medical services to inmates. Dkt. 60 at 1. Defendant Barbara Riggs was a nurse employed by Centurion in a supervisory role. Ingalls Deposition, dkt. 55-1 at 91. Defendant Crichfield was a Grievance Specialist and Defendant Malott was a Correctional Sergeant. *Id*. at 14-15. Neither Defendant had any medical training or involvement in offenders' medical care or treatment. Malott Affidavit, dkt. 55-2 at 1;  Crichfield Affidavit, dkt. 55-3 at 1-2; dkt. 55-1 at 16-17, 19. As a practice, correctional and grievance staff were generally required to defer to the professional judgment of medical staff regarding all aspects of inmates' medical care. Dkt. 55-2 at 1; dkt. 55-3 at 1-2.

3

**B.  Mr. Ingall's Ear Pain**

On June 12, 2022, Mr. Ingalls submitted a healthcare request form seeking treatment for a buildup of earwax that was interfering with his hearing. Medical Records, dkt. 59-1 at 1 ("I have an ear that is blocked up and I cannot hear. There is hard earwax buildup that I need to flush ASAP, please.").

The following day, Mr. Ingalls' ear pain became intolerable, so he called the control pod using the intercom system in his cell to request medical assistance. Dkt. 55-1 at 10-11, 22-23. Non-defendant Officer Heather Barlow answered the call and summoned her superior, Defendant Malott, to respond. *Id*. at 23, 24. Mr. Ingalls informed Defendant Malott that he was suffering from severe ear pain and associated hearing loss. *Id.* at 24, 26-27; dkt. 55-2 at 2. Defendant Malott assured Mr. Ingalls that he would relay his symptoms to medical staff to inquire about securing medical care, then ended the intercom call. Dkt. 55-1 at 27-28; dkt. 55-2 at 2.

Defendant Malott immediately contacted the medical area and reported Mr. Ingalls' ear pain and hearing loss. Dkt. 55-2 at 2. Medical staff told Defendant Malott that they would not send anyone to address Mr. Ingalls' concerns because they did not have staff available to respond and they did not have access to the medication necessary to treat his ear at that time. *Id.* Medical staff did not give Defendant Malott any indication that Mr. Ingalls' condition constituted an emergency or that Defendant Malott needed to take further steps to address Mr. Ingalls' medical concerns at that time. *Id*. Defendant Malott believed that, because he put medical staff on notice of Mr. Ingalls' acute health concerns, they would obtain Mr. Ingalls' ear medication and provide treatment in accordance with their professional judgment as soon as possible. *Id*.

Upon receiving this information, Defendant Malott called Mr. Ingalls via the intercom and explained what medical staff had told him. Dkt. 55-1 at 28, 29; dkt. 55-2 at 2. Defendant

Malott advised Mr. Ingalls that he could seek further remedy by submitting a health care request for his ear and grieving the nursing staff shortage. Dkt. 55-2 at 3; dkt. 55-1 at 37-38. Throughout the remainder of the day, Defendant Malott's staff monitored Mr. Ingalls multiple times during range walks and never reported anything to suggest that Mr. Ingalls required immediate medical care. Dkt. 55-2 at 2.

Mr. Ingalls' two intercom discussions with Defendant Malott on June 13, 2022, were Defendant Malott's only source of knowledge regarding Mr. Ingalls' ear issues at the relevant times. Dkt. 55-1 at 34-35; dkt. 55- 2 at 2. Because Defendant Malott never received any further information regarding Mr. Ingalls' medical issues, Defendant Malott assumed that Mr. Ingalls' ear issues had resolved sometime shortly after June 13, 2022. Dkt. 55- 2 at 2.

On June 14, 2022, Mr. Ingalls submitted a second healthcare request form, this time asserting that he had an ear infection. Dkt. 59-1 at 2. On June 27, 2022, he filed a grievance alleging that he was not receiving adequate treatment for his ear condition. Grievance Documents, dkt. 55-4 at 2. The grievance listed the date of incident as "June 18, 2022-ongoing," but the narrative portion stated, "Nearly three (3) weeks have passed since I've submitted a… health care request form[] (three (3) to date) concerning my ear blockage[,] which has been complained of for an infection[,]… severe pains[,] and lethargy..." *Id.*; dkt. 55-1 at 35. The Indiana Department of Correction's Offender Grievance Process states that a grievance must be filed "no later than ten (10) business days from the date of the incident giving rise to the complaint or concern . . . ." Dkt. 69-7, p. 11.

On June 29, 2022, Defendant Crichfield returned the grievance due to untimeliness. Dkt. 55-4 at 1-2; Crichfield Affidavit, dkt. 55-3 at 2. Mr. Ingalls never notified Defendant Crichfield that her interpretation of the grievance timeframe was incorrect, although he attests

that he submitted a request to her for an appeal form to continue the grievance process. Dkt. 55-3 at 2; Ingalls Affidavit, dkt. 69-1 at 2; dkt. 69-6 at 4.

Grievance specialists are generally not required to further investigate or respond to grievances submitted outside of the allowable timeframe. Dkt. 55-3 at 3. Defendant Crichfield did not perceive that Mr. Ingalls was at risk for serious harm based on the allegations asserted in his grievance. *Id.* at 3-4. Defendant Crichfield presumed that Mr. Ingalls' ear pain was resolved on or shortly after June 27, 2022. *Id.* at 4.

On July 5, 2022, Mr. Ingalls submitted another healthcare request form seeking treatment for "persistent ear infections (and blockage) which are severely painful and…have resulted in deafness." Dkt. 59-1 at 3.

More than a month after his first request for treatment, non-defendant Nurse Starla Rowlett-Toomey examined Mr. Ingalls on July 14, 2022. *Id.* at 4-6. He reported no symptoms of infection at that time. *Id*. at 5. Nurse Rowlett-Toomey's examination revealed normal external ears with no erythema and no bulging. *Id*. She visualized both tympanic membranes (eardrums) without issue and noted only a "scant amount of blood" in Mr. Ingalls's left ear canal. *Id*. Nevertheless, Nurse Rowlett-Toomey referred Mr. Ingalls for a provider visit with non-defendant physician Samuel Byrd, M.D. *Id.* at 6.

Dr. Byrd examined Mr. Ingalls on July 21, 2022, and ordered over-the-counter carbamide peroxide eardrops to help soften and remove earwax and a prescription for ciprofloxacin eye drops. *Id.* at 7. Mr. Ingalls admits that he received the carbamide peroxide in the form of Clearcanal brand earwax softener. Dkt. 55-1 at 89. He did not receive the ciprofloxacin. Dkt. 69-1 at 3.

Mr. Ingalls agrees that his "severe pain gradually went away," with his last "flare-up" occurring "probably within a few weeks" of his July 14 visit with Nurse Rowlett-Toomey. Dkt. 55-

1 at 76-79. Mr. Ingalls complains of continuing hearing loss but has not "had any formal diagnoses or testing done" to confirm the existence of any hearing loss or to ascertain the cause of any hearing loss that may be present. *Id.* at 81-82. However, medical records indicate that Dr. Byrd had ordered an audiogram at some point in 2022. Dkt. 59-1 at 10.

## IV.
### Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Ingalls' ear pain was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Ingalls'] health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Ingalls "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

## A. Barbara Riggs

Mr. Ingalls asserts that Defendant Riggs, as the Director of Nursing at the prison, is responsible for triaging inmates' medical treatment and ensuring that inmates receive the medications doctors prescribe for them. Dkt. 59-2 at 89-90. But he has no direct knowledge of her being personally involved in responding to his requests for treatment for his ear pain or in ensuring that he received any prescribed medications. *Id*. at 91-92.

"For constitutional violations under § 1983 or *Bivens*, a government official is only liable for his or her own misconduct." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (cleaned up). Thus "[a] damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'"). Mr. Ingalls has provided no

8

evidence that Defendant Riggs was personally involved in, or even aware of, his need for medical treatment. Thus, she is entitled to summary judgment.

### B. Centurion

Mr. Ingalls argues that Centurion knowingly fails to sufficiently staff the medical unit at Wabash Valley Correctional Facility and purposely withholds medication to save costs. To prevail on a 42 U.S.C. § 1983 claim against a private entity acting under color of state law—as Centurion was here—"a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, practice, or widespread custom; (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations; and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). The causation standard is "rigorous" and requires the plaintiff to show "a 'direct causal link' between the challenged municipal action and the violation of [the plaintiff's] constitutional rights." *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 235 (7th Cir. 2021) (citations omitted).

There is no evidence in the record that Centurion maintained any policy or custom that caused a violation of Mr. Ingalls' rights. The record demonstrates that Mr. Ingalls waited approximately one month to have his ear complaint addressed by medical staff, and that he only received one of the two medications prescribed by Dr. Byrd. But there is no evidence that these circumstances were the result of a deliberate policy or practice or that other inmates also experienced delays in receiving examinations or lapses in medication. *Hildredth v. Butler*, 960 F.3d 420, 426–27 (7th Cir. 2020) (denying prisoner's policy claim in part because he only introduced evidence about delays in his own healthcare and not that of other inmates).

Mr. Ingalls testified that Nurse Rowlett-Toomey told him that she had been called into the

prison due to Centurion being short-staffed on the day she examined him. Dkt. 55-1 at 94-95. Centurion responds that this evidence at most indicates that Centurion appeared to be making efforts to avoid or mitigate any staffing issues that may have been impacting Wabash Valley Correctional Facility in June and July 2022 by re-assigning personnel to work additional shifts. Dkt. 60 at 20; dkt. 55-1 at 101. Again, Mr. Ingalls has marshalled no evidence that Centurion had a policy or practice of maintaining inadequate staffing levels, or that such a policy or practice was the "moving force" behind any violation of Mr. Ingall's Eighth Amendment rights.

Centurion is therefore entitled to summary judgment.

### C. Sergeant Malott

Defendant Malott responded to Mr. Ingalls' complaints of severe ear pain on June 13, 2022, by contacting prison medical staff and relying on their professional judgment to determine what response was required. Mr. Ingalls contends that Defendant Malott was trained to respond to health-related situations within four minutes, based on a PowerPoint slide that discusses correctional officers' duty to act and specifically references CPR. Dkt. 68 at 21. But prison policies or training materials do not define the scope of Mr. Ingalls' constitutional rights. "Section 1983 protects against constitutional violations, not violations of departmental regulation and practices." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (cleaned up).

Defendant Malott was "entitled to rely on the professional judgment of medical prison officials," and he had no information that "made it obvious that [Mr. Ingalls] might not be receiving adequate care." *Giles v. Godinez*, 914 F.3d 1040, 1050 (7th Cir. 2019) (quoting *Hayes v. Snyder*, 546 F.3d 516, 527–28 (7th Cir. 2008)). And Mr. Ingalls does not dispute that Defendant Malott "immediately" contacted medical staff after Mr. Ingalls' complaint. Dkt. 55-2 at 2. "[A] non-trivial delay in treating serious pain can be actionable even without expert medical testimony showing

that the delay aggravated the underlying condition." *Id.* A relatively short delay, however, does not rise to the level of a constitutional violation. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (one-hour delay in responding to claim of injury by rape in prison did not rise to level of constitutional violation). Defendant Malott is therefore entitled to summary judgment.

### D. Grievance Specialist Crichfield

Mr. Ingalls alleges that Grievance Specialist Crichfield acted with deliberate indifference when she wrongly rejected his grievance about his untreated ear pain as untimely. Defendant Crichfield argues that she reasonably inferred that his "severe pain" was "tolerable" because his grievance indicated that he had waited nearly three weeks after submitting a healthcare request form to grieve the issue. Dkt. 56 at 9.

Prison officials may violate the Eighth Amendment if their failure to adequately investigate a prisoner's grievances delays his access to adequate medical care:

> An inmate's correspondence to a prison administrator may thus establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation. Indeed, once an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard. In other words, prisoner requests for relief that fall on "deaf ears" may evidence deliberate indifference.

*Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) (cleaned up).

On the other hand, if a prison official reasonably responds to a prisoner's complaints, then she lacks a "sufficiently culpable state of mind" to be deliberately indifferent. *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (finding grievance counselor did not violate the Eighth Amendment where he researched inmate's complaint, learned that medical professionals had seen and diagnosed inmate with medical condition and determined that surgery was not required); *see also Burks v. Raemisch*, 555 F.3d 592, 594-95 (7th Cir. 2009) (affirming grant of summary

judgment to prison complaint examiner who denied grievance as untimely "because she carried out her job exactly as she was supposed to").

Mr. Ingalls submitted a grievance on June 27, 2022, with an incident date of "June 18, 2022—ongoing." Dkt. 55-4 at 2. Defendant Crichfield disregarded this and relied instead on the narrative portion of the grievance in which Mr. Ingalls asserted that "nearly three weeks had passed" since he submitted a healthcare request form for his severe ear pain. But Mr. Ingalls submitted the grievance within the 10-day deadline dictated by the prison's grievance policy. And he clearly indicated that the problem was ongoing. A reasonable juror could conclude that Defendant Crichfield's rejection of Mr. Ingalls' grievance was not reasonable, and that his grievance alerted her to his ongoing severe pain and lack of treatment, yet she failed to use her authority to investigate and potentially remedy his issue. Had she not wrongfully rejected his grievance, she could have alerted medical personnel to the issue on June 29, 2022. Without her intervention, Mr. Ingalls was not seen by medical staff until July 14, 2022, when he reported that he was no longer experiencing symptoms. But Defendant Crichfield may be liable for the time between June 29, 2022, and the date that his ear pain subsided. "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 434, 441 (7th Cir. 2010). For this reason, Defendant Crichfield is not entitled to summary judgment.

## V.
## Conclusion

For the reasons stated above, Medical Defendants' motion for summary judgment, dkt. [58], is **granted**. Correctional Defendants' motion for summary judgment, dkt. [54], is **granted** as to Mr. Ingalls' claims against Defendant Malott, and **denied** as to his claims against

Defendant Crichfield. No partial final judgment shall issue. Mr. Ingalls' claims against Defendant Crichfield shall be resolved through settlement or trial if necessary.

The Court prefers that Mr. Ingalls be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. Ingalls a motion for assistance recruiting counsel with his copy of this Order. He has **through September 19, 2024**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 8/21/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

STEVEN INGALLS, JR.
271088
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Laura Brown
Lewis and Wilkins LLP
brown@lewisandwilkins.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com